David L. **WOOD**, R. E. Evans, Tommy J. Head and David Tirey, Jr., Plaintiffs-Appellants,

v.

**COMBUSTION ENGINEERING, INC.,** Defendant-Appellee.

No. 78–2498.

United States Court of Appeals, Fifth Circuit.

April 24, 1981.

---

9. See note 2, *supra.*

Butler, Binion, Rice, Cook & Knapp, Hayden Burns, J. Nicholson Meindl, Houston, Tex., for plaintiffs-appellants.

Rosenman, Colin, Freund, Lewis & Cohen, Steven Wolowitz, Peter F. Nadel, New York City, Baker & Botts, Darrel E. Reed, Jr., Houston, Tex., for defendant-appellee.

Before BROWN, GEWIN and POLITZ, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Appellants, four individuals, brought this action against Appellee, Combustion Engineering, Inc., claiming that they had been prompted to exchange their stock in another corporation for Combustion stock as a result of fraudulent misrepresentations, and omissions, on the part of Combustion. Appellants' complaint states a claim under the federal securities laws and a diversity claim under the Texas Blue Sky law. The District Court entered judgment dismissing the entire complaint. We find that the District Court correctly ruled that a two-year limitations period was applicable to Appellants' federal securities claim, that the doctrine of equitable tolling afforded Appellants no relief in this case, and that, therefore this claim was time-barred. We further find, however, that the District Court erred in dismissing Appellants' claim under the Texas Blue Sky law. Accordingly, we affirm in part, reverse in part, and remand this action to the District Court.

### The Complaint: Wood Burned By Combustion?

The essential facts relevant to this appeal are not in dispute. Appellants, David L.

Wood, R. E. Evans, Tommy J. Head and David Tirey, Jr., claim that they are former stockholders of American Pole Structures Corporation. According to Appellants, in September 1973, they exchanged their American Pole stock for the stock of Appellee, Combustion Engineering, Inc., in connection with a merger between American Pole and a subsidiary of Combustion. Appellants allege that they were prompted to exchange this stock as a result of fraudulent misrepresentations of material facts by Combustion and by the failure of Combustion to disclose other material facts, but that they did not, and could not, discover the true facts giving rise to the fraud until May 7, 1974.

Appellants were originally members of a class which filed suit against Combustion in Federal District Court in Philadelphia on May 15, 1974.[1] Appellants opted out of the class on October 7, 1975—with still seven months left to bring a private action within two years. Unfortunately, the instant action was not filed by Appellants in the Southern District of Texas until May 5, 1977—more than two years, but within three years, of the discovery of the alleged fraud.

Appellants' original complaint states two claims against Combustion: (i) that Combustion breached §§ 10 and 23 of the Securities and Exchange Act of 1934 (15 U.S.C. §§ 78j, 78w) and Rule 10b–5 (17 C.F.R. § 240.10b–5); and (ii) that Combustion violated § 33 of the Texas Securities Act (the Texas Blue Sky law) (Tex.Rev.Civ.Stat. 581–33 (1964)). For cause of action (i), the 10b–5 claim, Appellants invoke jurisdiction under § 27 of the federal securities Act (15 U.S.C. § 78aa). For cause of action (ii), the Texas Blue Sky law claim, Appellants invoke diversity jurisdiction (28 U.S.C. § 1332) and pendant jurisdiction.

On June 2, 1978, the District Court entered final judgment dismissing Appellants' entire cause of action against Combustion.

The District Court held Appellants' 10b–5 claim to be time-barred finding (i) that a two year statute of limitations is applicable to 10b–5 claims in Texas, and (ii) that the statute of limitations was not tolled during the pendency of the class action of which Appellants were, at one time, members. As for Appellants' claim under the Texas Blue Sky law, the District Court first, without express stated reasons, refused to allow Appellants to file a First Amended Complaint, which had been proffered to the Court.[2] The Court then, again without express stated reasons, dismissed this claim against Combustion.

*The Appeal: Several Burning Issues*

It is from this dismissal of the entire cause of action that Appellants now appeal. Appellants claim first that the District Court erred in finding a two-year, rather than a three-year, statute of limitations period applicable to 10b–5 claims in Texas. Appellants further contend that the District Court erred in failing to find that the limitations period was tolled during the pendency of the class action. Finally, Appellants claim that the District Court erred in dismissing their claim under the Texas Blue Sky law.

*(i) Statute Of Limitations: The Long Or Short Of It*

Appellants claim that the District Court erred in finding a two-year, rather than a three-year, statute of limitations applicable to 10b–5 actions in Texas.

The 1934 Securities and Exchange Act itself fixes no specific period of limitations within which a private litigant must bring a suit for damages. Nor is any federal statute of limitations generally applicable to private suits for damages under § 10(b) and Rule 10b–5. Accordingly, courts have been forced to fix, as a matter of federal common law, appropriate limitation periods. This Circuit has adopted a basic rule of

---

1. *Bowman v. Combustion Engineering, Inc.,* E.D.Pa., Civ. No. 74–1236.

2. The First Amended Complaint was apparently addressed at curing certain alleged defects in the pleadings concerning Appellants' claim under the Texas Blue Sky law.

general applicability in determining the appropriate limitations period in private 10b–5 actions:

,[A] court should apply the period which the forum state applies to the state cause of action bearing the closest substantive resemblance to the implied cause of action arising under the federal securities laws.

*McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888 (5th Cir. 1979). This basic rule enunciated in *McNeal* is consistent with the historical practice of this Circuit of making reference to the substantive law of the forum state in 10b–5 actions,[3] and this practice has met with the evident approval of the Supreme Court.[4] Although application of this rule inevitably forces us into making an "essentially esoteric" inquiry, *McNeal,* at 892, in the absence of congressional action we are obliged to follow this basic rule in this case.

■ The forum state in this case is Texas. In regard to Appellants' 10b–5 claim we must, therefore, choose between applying the two-year statute of limitations applicable to actions brought under § 27.01 of the Texas Business and Commerce Code (the general fraud statute),[5] or the three-year statute applicable to actions under the Texas Blue Sky law.[6] Prior to making this choice, we deem it appropriate to set out the language of the rule and statutes which we must analyze, and to then briefly review the decisions of other Federal Courts which have been faced with this same question.

Rule 10b–5, which is the cornerstone for the implied cause of action under the federal securities laws, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

The Texas general fraud statute (Tex. Bus. & Comm.Code § 27.01) provides:

Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a (1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract . . . .

Finally, the Texas Blue Sky law provides:

A. Any person who . . . (2) Offers or sells a security . . . by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements

---

**3.** See *Dupuy v. Dupuy,* 551 F.2d 1005, 1023–24 n.31 (5th Cir. 1977); *Nortek, Inc. v. Alexander Grant & Co.,* 532 F.2d 1013, 1015 (5th Cir. 1976); *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996, 999 (5th Cir. 1974); *Sargent v. Genesco,* 492 F.2d 750, 758 (5th Cir. 1974).

**4.** *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n.29, 96 S.Ct. 1375, 1389 n.29, 47 L.Ed.2d 668 (1976).

**5.** Tex.Bus. & Comm.Code § 27.01 (1968). The general fraud statute itself makes no provision for a time limit within which suit must be brought. However, the Texas law fixing a two-year limitations period for actions based upon

fraud (Vernon's Tex.Stat.Ann. § 5526) has been generally applied to actions under this statute. See *Bauman v. Centex Corp.,* 611 F.2d 1115, 1119 (5th Cir. 1980); *Richardson v. Salinas,* 336 F.Supp. 997, 1000 (N.D. Tex. 1972); *White v. Bond,* 362 S.W.2d 295, 296 (Tex. 1962).

**6.** Tex.Rev.Civ.Stat. 581–33 (1964). This Act was amended in 1977 and again in 1979. However, for purposes of the present controversy we make reference to the "old" statute (i. e. pre-1977). The Act itself sets out a three-year period within which suit must be brought. 581–33(C).

made not misleading (when the person buying the security does not know of the untruth or omission, and who in the exercise of reasonable care could not have known of the untruth or omission) is liable to the person buying the security from him . . . .

A number of Federal Courts have considered the same question which faces us, that is whether the two-year statute of limitations of the Texas general fraud statute or the three-year limitations period of the Texas Blue Sky law should apply to actions under 10b–5. It is perhaps a good reflection of the abstruseness of this question that the holdings of these cases are entirely irreconcilable.

We have found three decisions, in addition to the decision of the District Court in the instant case, which indicate that a two-year statute of limitations is to be applied to actions under 10b–5 in Texas. In *Hendricks v. Flato Realty*, Fed.Sec.L.Rep. (CCH) ¶ 92,290 (S.D. Tex. 1968), the Court suggested, by way of dicta, that the two-year limitations period was applicable finding simply that "[t]he cases which have considered whether to apply the limitation period for the forum state's Blue Sky law or the period applicable to common law fraud have consistently chosen the latter." Rather than engage in an independent analysis of the two Texas statutes, the Court merely followed what it perceived to be a trend in other cases. In *Carpenter v. Hall*, 311 F.Supp. 1099, 1107 (S.D. Tex. 1970), the Court merely proceeded under the assumption that the two-year limitations period was applicable to 10b–5 actions, but found that the statute was tolled. Similarly, in *Aboussie v. Aboussie*, 441 F.2d 150, 156 (5th Cir. 1971), this Court assumed for purposes of the appeal that the two-year limitations period was applicable since both parties proceeded on that assumption.

We have also found three decisions applying a three-year statute of limitations to

10b–5 actions in Texas. In *Richardson v. Salinas*, 336 F.Supp. 997 (N.D. Tex. 1972), the Court determined that two things must be considered in determining the applicable limitations period:

> [F]irst, which state substantive statute is closer in purpose to rule 10b–5; second, which limitation period, considered apart from the substantive law it controls, best effectuates the purposes of Rule 10b–5?

*Id.*, at 999. The Court ruled in favor of the Texas Blue Sky law, with its three-year limitations period, on both counts. *Id.*, at 1000. In *Ramsey v. Arata*, 406 F.Supp. 435, 441 (N.D. Tex. 1975) the Court, without discussion, applied a three-year limitations period, citing *Richardson*. Finally, in *Berry Petroleum Company v. Adams & Peck*, 518 F.2d 402 (2d Cir. 1975), the Second Circuit seemed to employ a two-step analysis akin to that in *Richardson* and found a three-year limitations period to be applicable.[7] The Court first found that the cause of action under the Texas Blue Sky law more nearly approximated that under 10b–5. *Id.*, at 409. The Court then found that the purposes of 10b–5 would be best effectuated by applying a three-year rather than a two-year limitations period, declaring in a question begging statement that "[a] person with a cause of action under Rule 10b–5 should be able to bring a suit in federal court if he also has a timely cause of action in state court." *Id.* The Court further observed that "[t]he broad remedial policies of the federal securities laws are best served by a longer, not a shorter, statute of limitations." *Id.*

The District Court in the instant case applied the two-year statute of limitations under the Texas general fraud statute to the 10b–5 action. The Court made an independent analysis of both the Texas Blue Sky law and the general fraud statute and found the cause of action under the latter to more closely resemble that under 10b–5.

---

7. The action considered by the Second Circuit in *Berry Petroleum* was originally filed in the Northern District of Texas, but it was transferred, pursuant to 28 U.S.C. § 1407, to the Southern District of New York by the Judicial Panel

on Multidistrict Litigation. 518 F.2d at 406. The Second Circuit analyzed Texas law, rather than New York law, in determining the applicable limitations period since Texas was the forum state where the suit was initiated. *Id.*

The Court accorded little weight to the decisions in *Berry Petroleum, Ramsey* and *Richardson*, observing that these cases were decided prior to the Supreme Court's decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), which held that scienter is a necessary element of an action brought under 10b–5.

This Court, of course, is bound by none of these previous decisions which have considered the question of the applicable limitations period for a 10b–5 action in Texas.[8] We, therefore, feel it incumbent upon ourselves to make an independent examination of this question. In formulating our ruling, we observe in advance that we are not particularly influenced by so-called "trends" among the Federal Courts with respect to following either the limitations period of

the state Blue Sky law or the state general fraud provision.[9] These statutes are by no means uniform from state-to-state, and therefore ready adherence to a perceived preference by the courts of following the limitations period of one statute over the other can give rise to improper results.[10] We further observe that we do not follow the practice of several other Circuits of making an inquiry into which state limitations period, independent of consideration of the substantive provisions of the corresponding state statute, best effectuates the purposes of Rule 10b–5.[11]

The cause of action under neither the Texas Blue Sky law nor the Texas general fraud statute is substantively identical to that under 10b–5. However, we are persuaded that the cause of action under the fraud statute bears a closer substantive re-

**8.** As previously discussed, the only Fifth Circuit case to consider this question was *Aboussie*. However, the Court in that case merely assumed for purposes of the appeal that the two-year limitations period was applicable since the parties proceeded on that assumption. The Court, itself, never passed on the question.

**9.** *See, e. g., Wachovia Bank and Trust Company v. National Marketing Corporation*, Fed.Sec. L.Rep. (CCH) ¶ 97,712 (D.C.Cir.1980), in which the Court, faced with a question similar to our own, observed:

The question of the appropriate statute of limitations in an equivocal one because the trend in the federal case law has shifted. Federal courts once favored invocation of the general fraud limitations period for Rule 10b–5 actions. But during the last decade, the law has moved toward application of the blue sky law limitations period.

**10.** *See Carothers v. Rice*, Fed.Sec.L.Rep. (CCH) ¶ 97,632 (6th Cir. 1980), in which the Court applied Kentucky's Blue Sky law limitations period to a 10b–5 action. The Court observed that whereas it had previously chosen the statute of limitations applied to common law fraud actions when considering Michigan and Ohio statutes, the law of Kentucky differed from that of Michigan and Ohio and that those cases were therefore distinguishable.

**11.** At least three Circuits, for example, have said that the "broad remedial" purposes of the federal securities laws are best served by longer, not shorter, statutes of limitation—at least where two state statutes are available to a securities fraud claimant. *See Berry Petroleum*, 518 F.2d at 409 (2d Cir.); *Nickels v. Koeh-*

*ler Management Corp.*, 541 F.2d 611, 618 (6th Cir. 1976); *IDS Progressive Fund, Inc. v. First of Michigan*, 533 F.2d 340, 344 (6th Cir. 1976); *United California Bank v. Salik*, 481 F.2d 1012, 1015 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973). On the other hand, a Fourth Circuit case has observed that "congress has not favored long limitations in private civil suits under the securities laws." *Newman v. Prior*, 518 F.2d 97, 100 (4th Cir. 1975). We find this additional inquiry as to which length of limitations period best effectuates the public policy of the federal securities laws to be speculative at best, and therefore confine our analysis to that enunciated in *McNeal*, as we have previously outlined.

Although several courts in other Circuits have cited our opinion in *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 8 (5th Cir. 1967), as support for the proposition that longer statutes of limitation are preferred under the securities laws, *see, e. g., Berry Petroleum*, 518 F.2d at 409; *Salik*, 481 F.2d at 1015 n. 9, it is evident that this Court has never so interpreted *Azalea*. First, the language in *Azalea* which other Courts have seized upon was acknowledged by the Court to be nothing more than gratuitous dicta. Second, to the extent that that case may have suggested a preference for a longer limitations period, that dicta has clearly not been followed by this Court in later cases. This is best reflected by the case of *Hudak*, 499 F.2d 999, 1000, decided subsequently to *Azalea*, and also considering Florida law, in which this Court applied a two-year rather than a three-year limitations period to 10b–5 actions with no indication that this result would undermine the purposes of the federal securities laws.

semblance to the 10b–5 action than does that under the Blue Sky law—at least as the Blue Sky law existed prior to amendment in 1977.[12]

We are primarily convinced of our choice because we find that the essential elements of a 10b–5 action are more akin to those of the Texas general fraud statute. In this regard, we initially observe that the cause of action under Rule 10b–5 today is essentially "fraud like" in character. The 10b–5 action today requires all the essential elements of common law fraud except privity, and arguably, in certain rare instances, reliance.[13] This is especially true now that the Supreme Court has firmly established scienter as a requirement of a 10b–5 action. *Hochfelder*, 425 U.S. at 193, 96 S.Ct. at 1380.

We find the cause of action under the Texas Blue Sky law, however, to be significantly broader than that under the Texas general fraud statute or 10b–5. Two major considerations, which go to the very heart of the substantive causes of action, convince us that this is so.

The first major consideration concerns the element of reliance. There is no requirement of reliance under the Blue Sky law.[14] The Texas general fraud statute, on the other hand, contains an express requirement of reliance. While the precise extent of the reliance requirement under 10b–5 is not entirely clear,[15] we nevertheless find it to more closely approximate the explicit reliance requirement of the general fraud statute.[16]

The second major consideration concerns the element of scienter. There is no requirement of scienter under the Blue Sky law.[17] It does appear, on the other hand, that some Texas cases do require proof of scienter to establish actionable fraud.[18] It is now well settled that scienter is a requirement for a 10b–5 action, *Hochfelder*, 425 U.S. at 193, 96 S.Ct. at 1380, and thus we find 10b–5 to more closely resemble the general fraud statute in this regard.[19]

Although it must be said that these factors do not bear as much weight as our basic finding that the essential elements of the general fraud cause of action are more akin to those of 10b–5, there are several additional factors which support our conclusion that the general fraud statute bears a closer substantive resemblance to 10b–5 than does the Blue Sky law. First, we

---

12. *See* n.6. We recognize that since our opinion must deal with the pre-1977 Blue Sky law, we sound no intimation nor make any prediction as to actions which accrue subsequent to that time.

13. There is no doubt that reliance is an essential element of a 10b–5 action alleging misrepresentation. However, in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), a non-disclosure case, the Supreme Court held that plaintiff's inability to positively prove reliance did not bar recovery. A year later this Court declared that *Ute* did not do away with the reliance requirement, and found that "some element of general reliance by plaintiff, even in non-disclosure cases, is essential to a Rule 10b–5 action." *Simon v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 884 (5th Cir. 1973). As clarified by this Court in *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978), *Ute* merely established that a plaintiff might be entitled to a presumption of reliance in certain non-disclosure cases, but that the presumption is rebuttable. More recently, however, this was discussed in *Shores v. Sklar*, 610 F.2d 235, 240 (5th Cir. 1980)—vacated and pending on rehearing en banc.

14. *Berry Petroleum*, 518 F.2d at 409; Bordwine, Civil Remedies under the Texas Securities Laws, 8 Houston L.Rev. 657, 671 (1971).

15. *See* n.13, *supra*.

16. *But cf. Berry Petroleum*, 518 F.2d at 409.

17. *See Berry Petroleum*, 518 F.2d at 408; Bordwine, at 674.

18. *See, e. g., Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230 (Tex.Civ.App. San Antonio, 1975, writ ref'd. N.R.E.); *see also Berry Petroleum*, 518 F.2d at 408.

19. While we do not believe that it is necessarily dispositive of this case, we nevertheless deem the fact that a 10b–5 action contains a scienter requirement while the Texas Blue Sky law does not, to be a relevant, and significant, factor in our ultimate determination. We emphasize that *Berry Petroleum*, which also considered the scienter element, 518 F.2d at 408, was decided prior to *Hochfelder*.

observe that not only does the Blue Sky law permit plaintiffs to prevail against defendants without establishing scienter, but further that that Act denies defendants a "due diligence" defense.[20] Second, the Blue Sky law, by its express terms, is available only to purchasers, while 10b–5 and the general fraud statute give both sellers and purchasers a cause of action. Additionally, the Blue Sky law requires that there be a tender of the security as a prerequisite to recovery. (Bordwine, at 662, 673), while 10b–5 and general fraud have no such requirement. *See Wolf v. Frank*, 477 F.2d 467, 475 (5th Cir. 1973).

For one or more or all of these reasons we find the action under the Texas general fraud statute to more closely resemble the action under 10b–5 and thus, we apply a two-year limitations period to Appellants' federal securities claim.

*(ii)   The Statute: It Tolls Not For Thee*

■ Having concluded that a two-year limitation period is applicable to Appellants' 10b–5 claim, we must now consider Appellants' argument that the statute of limitations was tolled during the pendency of the class action of which they were originally members. Appellants argue, that even though they waited approximately 19 months to file suit after opting out of the class, since the original class action was filed within a few days of the discovery of the alleged fraud, they were still well within the two-year limitations.

In support of their argument, Appellants rely on *American Pipe Construction Co. v. Utah*, 414 U.S. 538, 552–53, 94 S.Ct. 756, 765–66, 38 L.Ed.2d 713 (1974), in which the Supreme Court held that when class action status has been denied, the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motion to intervene after denial of class certification. Appellants argue that the *American Pipe* tolling rule has been extended by virtue of dicta in a subsequent Supreme Court case which suggests that the pendency of a class action might toll the statute of limitations for those who later opt out. *Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 176 n.13, 94 S.Ct. 2140, 2152, n.13, 40 L.Ed.2d 732 (1974). *See also United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); *Satterwhite v. City of Greenville*, 578 F.2d 987, 996–97 (5th Cir. 1978) (en banc), *remanded*, 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980), *on remand*, 634 F.2d 231 (5th Cir. 1981).[21]

It must be said that there appears to be a very real controversy as to whether *Eisen* extends *American Pipe* to situations in which a class action member opts out and files separate suit.[22] While this question is

**20.** The Blue Sky laws of most states while permitting a plaintiff to prevail without establishing the element of scienter, nevertheless allow a defendant to avoid liability if he can prove that he did not know, and in the exercise of reasonable care could not have known of the untruth or omission. *See* 3 A. Bromberg & L. Lowenfels, Securities Fraud and Commercial Fraud, 8.4(210) (1971). The Texas Blue Sky law, on the other hand, is significantly stricter, affording defendant a defense only if he can prove that no material misstatement or omission was made or that plaintiff did in fact know of the untruth or omission involved. *See* H. Bateman, Securities Litigation: The 1977 Modernization of Section 33 of the Texas Securities Act, 15 Houston L.Rev. 839, 841 (1978).

**21.** The relevant dicta in *Eisen* arose in a case in which Petitioner contended that, for various reasons, the Court should dispense with the requirement of individual notice in the class action suit which he was prosecuting. In response to one of the reasons urged by Petitioner, the Court stated:

> Petitioner also argues that class members will not opt out because the statute of limitations has long since run out on the claims of all class members other than petitioner. This contention is disposed of by our recent decision in [*American Pipe*], which established that commencement of a class action tolls the applicable statute of limitations as to all members of the class.

417 U.S. at 176 n.13, 94 S.Ct. at 2152 n.13.

**22.** For decisions which suggest the limitations period might not be tolled in such a case, *see Stull v. Bayard*, 561 F.2d 429 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1977); *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977). *Contra, see McAlpine v. Aamco Automatic Transmissions, Inc.*, CCH Trade Cases ⁋ 61,359 (E.D.Mich.1977).

an interesting one, and one which this court has apparently never squarely faced, we decline to pass on the question at this time. We believe that even if Appellants could establish that tolling would generally be allowable in this case, they still would be barred by the statute of limitations.

The tolling principle which Appellants seek to invoke in this case is first and foremost a creature of equity. Although statutes of limitations will ordinarily bar the untimely institution of suit, courts have found that frequently the underlying policy behind the limitation statutes, that is fairness to the defendant, is outweighed by the interest of affording a plaintiff a forum to vindicate his rights. *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). Equity, therefore, may frequently come to the rescue of a plaintiff who, for one reason or another, has been prevented from timely filing suit. However, once the barrier to suit has been removed, we do not believe that a plaintiff stands in as strong a position to seek the support of equity to excuse his continued failure thereafter to timely file.

In the present case, Appellants persuasively argue that they were effectively prevented from filing suit on their own behalf during the pendency of the class action of which they were members. However, once this barrier to suit was effectively removed, by their opting out of the class, there was no longer any such restraint. But instead of taking action Appellants, waited an additional 19 months before bringing suit. Whatever equitable arguments Appellants might have had for excusing their failure to timely institute suit immediately after opting out of the class action, the Appellants' continued failure to file for this long period of time cannot be excused on equitable principles.[23]

Since the doctrine of equitable tolling affords Appellants no relief, we affirm the District Court's holding that Appellants' 10b–5 action is time-barred.

### (iii) Pleading The Clear Blue Sky

Although we have already held that Appellants' 10b–5 claim is time barred, this does not automatically dispose of the state law claim asserted under diversity jurisdiction. The District Court, without stated reasons, dismissed Appellants' Blue Sky claim after first, again without stated reasons, refusing to permit Appellants to file a First Amended Complaint.

This Court recognizes a very rigid standard with respect to the dismissal of actions. Recently, in *Robinson v. Price*, 553 F.2d 918, 919 (5th Cir. 1977), we reiterated that which we have said many times before:

A motion to dismiss should not be granted unless it appears *to a certainty* that the plaintiff would not be entitled to *recover under any state of facts which could be proved in support of his claim.* (Emphasis in original).

We believe that, under the circumstances, dismissal of Appellants' diversity state law claim was error. However, by this ruling we make no intimations as to the ultimate merits, or demerits, of this claim, nor bar the possibility that this claim might be properly disposed of on summary judgment or if not, then by motion for directed verdict at the close of the plaintiffs' case, or at the close of all evidence or later on judgment n. o. v.

### Conclusion: Fire Not Yet Extinguished

Because we find a two-year statute of limitations applicable to Appellants' 10b–5 action, that the doctrine of equitable tolling affords Appellants no relief in this case, but that the District Court erred in dismissing Appellants' claim under the Texas Blue Sky

---

**23.** The only "equitable" argument pressed by Appellants as an excuse for their failure to timely file, is that they consistently relied on a three-year statute of limitations. This conten-

tion clearly bears no relationship to Appellants' basic argument that the statute of limitations was tolled during the pendency of the class action, and we find it without merit.

law, we affirm in part, reverse in part, and remand this case to the District Court.[24]

AFFIRMED IN PART; REVERSED IN PART and REMANDED.

24. Costs in this case are taxed ⅔ against Appellants and ⅓ against Appellee.