LEWIS R. MORGAN, Senior Circuit Judge:
The appellants instituted this action in the United States District Court for the Northern District of Georgia to recover damages which they alleged they incurred as the result of the appellees’ violations of federal securities laws and state laws. The district court granted summary judgment in favor of the appellees on the federal securities claims holding the action was time barred by the two year limitations. Appellants bring this appeal contending the district court should have applied a four year limitations period.
For the purpose of the motion for summary judgment, the parties stipulated to the following facts: From May 1973 to October 1977, the appellants, with the exception of Michael Edkins, purchased promissory notes issued by Thermal Belt Air Services, Inc. (TBA). During this same time period, a TBA note issued to Michael Edkins was purchased by appellant J.L. Diamond. In their complaint the appellants alleged that Jack C. Pettee, an employee of appellee Mastrom, Inc., fraudulently represented that promissory notes issued by Thermal Belt Air Services, Inc., and purchased by or for the appellants were a “prudent, safe and secure investment” and that TBA’s business was “booming.”
In October and November of 1977, certain creditors of TBA, including the appellants, received written communications from TBA and Pettee to the effect that TBA’s financial condition was extremely precarious. During the same time period, TBA failed to make interest payments due to the appellants on the various TBA notes. In December 1977, TBA petitioned for relief from its debts under the federal bankruptcy laws. Accordingly, by December 1977, the appellants knew or had reason to know of any fraudulent conduct by Pettee or TBA concerning TBA's financial condition.
The appellants filed their complaint on September 16, 1981, over two years but less than four years after the action accrued.[1] In the complaint, the appellees are alleged either to be “sellers” of the notes or as parties who had an obligation to protect the appellants. Specifically, in Count I of their complaint, the appellants alleged the appellees violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. In Count II, the appellants allege appellee Mastrom, Inc., violated §§ 15(a)(1) and 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78o(a)(l), 78cc(a). In Count III, the appellants sought to assert liability against the various appellees as *1421 controlling persons pursuant to Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). The remaining counts of the complaint set forth violations of state law, including common law fraud.
The appellees filed motions for summary judgment as to Counts I, II, and III asserting that these claims were barred by the applicable statute of limitations. The appellants did not oppose the motions as to Counts II and III. The district court concluded that the claims brought pursuant to the federal securities laws were barred by the applicable statute of limitations and therefore granted summary judgment in favor of the appellees. The court also dismissed the state law claims for lack of complete diversity of citizenship between the parties. It is from the grant of summary judgment as to Count I that the appellants appeal.[2] Accordingly, the sole issue before this court is which state statute of limitations is applicable to this action brought pursuant to Section 10(b) and Rule 10b-5 of the 1934 Securities Act in a federal court sitting in Georgia.
Neither Section 10(b) nor Rule 10b-5 expressly creates a private right of action for damages and therefore, there is no specific statute of limitations governing timeliness of actions brought for their violation. Where such a void occurs within the interstices of federal statutory law the courts have “borrowed” the “most appropriate” law of limitations of the forum state. Board of Regents v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-95, 64 L.Ed.2d 440 (1980); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). See also McNeal v. Paine, Webber, Jackson and Curtis, Inc., 598 F.2d 888, 891 n. 4 (5th Cir.1979). The Supreme Court, in determining the most appropriate state limitations, has consistently applied the limitations period governing the most closely analagous state cause of action after an examination of the federal cause of action and the federal policies involved. United Parcel Service v. Mitchell, 451 U.S. 56, 60-61, 101 S.Ct. 1559, 1562-1563, 67 L.Ed.2d 732, 739 (1981); Occidental Life Insurance Company v. EEOC, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). This analysis begins with an inquiry into the nature and characterization of the federal claims. United Parcel Service v. Mitchell, supra; International Union of Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 705-707, 86 S.Ct. 1107, 1113-1114, 16 L.Ed.2d 192, 200 (1966). The second stage of the analysis then focuses upon whether the state limitations period is inconsistent with the policies expressed in the federal statutes. Id. See also Board of Regents v. Tomanio, supra; Johnson v. Railway Express, supra. Federal policy, therefore, plays two functions in this analysis: defining and refining the characterization of the federal cause of action and limiting the application of state timeliness rules that would frustrate the federal cause of action.
In implementing this analysis, this circuit first inquires into how the state court would categorize the action looking to the “essential nature” of the claim and then determines the state limitations period applying to the action so categorized. Ingram v. Steven Robert Corp., 547 F.2d 1260 (5th Cir.1977); Shaw v. McCorkle, 537 F.2d 1289 (5th Cir.1976). Consistent with the Supreme Court’s dictate, this court has refused to apply a limitations period that impinged on federal policies underlying the action. See, e.g., Franklin v. City of Marks, 439 F.2d 665 (5th Cir.1971). However, this court has quickly eschewed borrowing state limitations statutes solely on the basis that it either best effectuated federal policies or represents a trend among the various federal courts in choosing one state limitations period over another. Ingram, supra, at 1261; Wood v. Combustion Engineering, Inc., 643 F.2d 339, 344 n. 11 (5th Cir.1981). In accordance with the Supreme Court’s directive that the law of limitations of the *1422 forum state is to be followed in the context of implied actions under Section 10(b) as in other cases of judicially implied remedies, Ernst and Ernst v. Hochfelder, 425 U.S. 185, 210, 96 S.Ct. 1375, 1389, 47 L.Ed.2d 668, 686 n. 29 (1976), this court has applied the limitations period governing the state cause of action bearing the closest substantive resemblance to the federal claim. White v. Sanders, 650 F.2d 627 (5th Cir.1981); Wood v. Combustion Engineering, supra; McNeal v. Paine, Webber, supra. While not expressly analyzed under the formulation of Ingram and McCorkle, these cases nonetheless have engaged in the “essentially esoteric” inquiry, McNeal, supra, at 892, of comparing the essential elements of the cause of action asserted by the plaintiff with the proffered state causes of action asserted to be closely analagous. For example, in McNeal the plaintiff sought damages against the defendant for unlawful “churning” of his account. The court analyzed the various elements of the Section 10(b) action with those available under the Georgia Securities Act of 1957 and Georgia common law fraud and concluded that because the remedy the plaintiff sought, damages against the broker, was not available under the blue sky statute the general fraud limitations period controlled. McNeal, supra, at 894. Similarly, in Wood the court compared a Section 10(b) claim based on fraudulent misrepresentations and omissions with those claims cognizable under the forum’s blue sky and fraud statutes. Wood, supra, at 345-46. Finally, in White the court in making a similar comparison looked at the essential elements of a Section 10(b) claim with the requirements of the state’s blue sky action and determined that the causes of actions were substantively similar. In addition the court looked at the purposes of the two statutes, not as an independent means of selecting the appropriate limitations period, but as one additional factor for comparison.
Thus, these cases dictate the method to ferret out the Georgia statute of limitations which should be applied in this case. First we categorize this action as a Georgia court would had this action or a similar action been brought in state court. In so categorizing the action, we compare the essential elements of the federal cause of action with those available choices under state law, looking not only to the elements of the analagous actions but also to the similarity of purposes behind the actions. Second, the state categorization of the action and concomitant limitations periods are applied unless the categorization or limitation period is inconsistent with federal policy.
With this method of analysis before us, we turn to deciding which Georgia statute of limitations governs this action. Here the choice is between the four year limitations period applicable to common law fraud, Ga. Code Ann. § 3-1002,[3] and the two year period applicable to actions under the Georgia Securities Act of 1973, Ga.Code Ann. § 97-114(c). The district court concluded that the two year period controlled and because more than two years had elapsed since the action accrued the court held the actions were time barred. Because we agree with the result below, but not necessarily the reasoning employed, we affirm. In concluding that the cause of actions available under the Georgia Securities Act of 1973 is the most closely analagous to the Section 10(b) action relied upon here, we find that the essential and material elements of these causes of action are not significantly dissimilar. Therefore under the precedent of White v. Sanders, supra, we are bound to follow the state limitations applicable to the state cause of action which has underlying policies more closely attuned to the federal claim.
The essential elements of a Section 10(b) and Rule 10b-5 action for misrepresentation are: (1) false representation of a material fact (2) made with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff’s *1423 damages. Shores v. Sklar, 647 F.2d 462, 468 (5th Cir.1981) (en banc), cert. denied - U.S. -, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); Huddleston v. Herman and MacLean, 640 F.2d 534 (5th Cir.1981), aff’d in part and rev’d in part on other grounds, - U.S. -, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Common law fraud tort actions for fraudulent representations and deceit contain similar elements. Oklejas v. Williams, 165 Ga.App. 585, 586, 302 S.E.2d 110 (1983); Reilly v. Mosley, 165 Ga.App. 479, 301 S.E.2d 649 (1983). Under the Georgia Securities Act it is unlawful for any person:
(2) To offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission) if such person shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.
Ga.Code Ann. § 97-112(a)(2). A cause of action is expressly provided in favor of purchasers for the violation of Section 97-112(a)(2). Ga.Code Ann. § 97-114(e). The Georgia Securities Act does have a provision tracking the language of Rule 10b-5, Ga.Code Ann. 97-112(d), however no cause of action is expressly provided for its violation.
The essential elements to be compared, as gleaned from McNeal, Wood, and White, are scienter, reliance, and the relief available to this plaintiff against the persons from whom relief is sought. While scienter is required under Rule 10b-5 and common law fraud, we cannot rely on this comparison because it is not clear that there is such a requirement under the Georgia blue sky statute. Arguably, because the language of 97-112(a)(2) tracks the language of Section 410(a) of the Uniform Securities Act and Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 777(2), scienter is not required. See Ernst and Ernst, supra, 425 U.S. at 210, 96 S.Ct., at 1389. (Section 12(2) is premised on negligent wrongdoing.) However, it is also arguable that “recklessness” may have to be proved under Section 97-112(a)(2), c.f. Ga.Code Ann. § 105-302 (reckless representations of facts as true is equivalent to a knowledge of the falsehood), which will suffice for scienter for 10b-5 purposes in this circuit. Shores v. Sklar, supra, at 471 n. 9; Huddleston v. Herman and MacLean, supra. However, because it is unclear the precise extent and nature of the scienter requirement of the Georgia statute, we heed the concern of McNeal and do not rest our decision upon this point. See McNeal, supra, at 895 n. 18. Similarly, we cannot make a meaningful comparison based upon the reliance requirement.
Regarding the relief available to these plaintiffs against these defendants, we note that in McNeal it was determinative of the issue that the plaintiffs could not state a cause of action for “churning” against a broker under the Georgia Securities Act of 1957. McNeal, supra, at 894. In contrast, where the state blue sky statute provided all the legally cognizable relief which the plaintiff requested, the fact that Rule 10b-5 provided redress to a broader range of potential plaintiffs was not deemed to be “of controlling significance.” White v. Sanders, supra, at 629. In this case, the appellants, as purchasers, sought relief against the appellees either as principals or aiders and abetters. Clearly such a claim is cognizable under both the fraud and blue sky statutes. Additionally the appellants sought relief, from various defendants on the theory of “controlling persons” liability pursuant to Section 20(a) of the 1934 Act, 15 U.S.C. § 78t. See also 15 U.S.G. § 77o (control person liability under the Securities Act of 1933.) Such a claim is cognizable under the blue sky statute, Ga. Code Ann. § 97-114(b), but is generally not allowed in common law fraud actions. See R. Jénnings and H. Marsh, Securities Regulation 1095-1109 (4th Ed.1977). See also Johns Hopkins University v. Hutton, 297 F.Supp. 1165, 1211-1212 (D.Md.1968), rev’d on other grounds 422 F.2d 1124 (4th Cir. *1424 1970). This distinction, however, fails to arise to a significant level because the appellants did not oppose summary judgment on the controlling persons count of their complaint. Finally, the appellants sought return of their consideration paid for the TBA notes, interest and attorney’s fees pursuant to their Rule 10b-5 claim. Each of these measures of recovery is available under the fraud and blue sky actions. The appellants also sought punitive damages which do not appear to be available under the blue sky statute. This, however, is also not of controlling significance because punitive damages are not available in a Rule 10b-5 action. Jones v. Miles, 656 F.2d 103, 107 n. 8 (5th Cir.1981).
Because no meaningful substantive distinction arises between the Section 10(b) and Rule 10b-5 action asserted here and comparable actions available under the common law fraud and blue sky statute, we are left with a comparison of the relative purposes served by the various statutes. Without doubt the blue sky statute is more closely attuned to securities fraud than generalized common law fraud. White v. Sanders, supra, at 632-33. The blue sky cause of action serves to supplement the relief available to a defrauded purchaser of securities and therefore particularizes a securities fraud case. See Ga.Code Ann. § 97-114(e) (“Nothing in this Chapter shall limit any statutory or common law right of any person in any court for any act involving the sale of a security.”) Therefore, in choosing between two state limitations periods applicable to two state causes of action each analagous to the federal claim in all material respects we must choose that which is most closely attuned in language, coverage, and purposes to the federal claim. Consequently, after examining these various considerations, we conclude the action under the Georgia blue sky statute is the more closely analogous action to the cause of action asserted here.[4]
For the foregoing reasons, we conclude that the two year statute of limitations prescribed by the Georgia blue sky statute governs the timeliness of appellants’ actions. Therefore the judgment appealed from is
AFFIRMED.

. As a matter of federal law, the period of limitations applicable to implied causes of action under § 10(b) begins running only when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the alleged violations. McNeal v. Paine, Webber, Jackson, and Curtis, Inc., 598 F.2d 888, 893 n. 11 (5th Cir.1979).

. The appellants appeal only the propriety of the grant of summary judgment as to Count I of their complaint. Accordingly, we do not address any other issue.

. In determining the statute of limitations applicable to the claim, we look to the state law as it existed at the time the claim accrued. McNeal v. Paine, Webber, supra, at 892 n. 9. Therefore all citations to Georgia statutes are to those existing in December 1977.

. We believe the Georgia courts would categorize this claim as a securities fraud claim and apply the two year limitation. In Dehler v. Setliff, 143 Ga.App. 430, 238 S.E.2d 723 (1977), the court applied the two year limitations period of the Georgia Securities Act of 1957 in an action for the recovery of the purchase price of securities against an officer of the issuer purchased in reliance on false representations that allegedly occurred as the result of gross negligence. Although the court applied the securities limitations because any duty owing to the plaintiff would arise solely by virtue of the blue sky statute, the court stated that, regardless of any common law recovery available to the plaintiff, the securities limitations controlled. However, because Dehler involved the 1957 blue sky statute and because of the dearth of cases construing the interplay of the 1973 blue sky statute and common law fraud, we cannot hold that the state categorization of this claim would necessarily be one asserted under the blue sky statute.